## Nether Providence Township School District *v.* Mercur, Appellent.

*Equity—Injunction—Damages—Contract—School building—Directors.*
Where a board of school directors have accepted a bid for the erection of a school building, and the contract with plans and specifications has been prepared and signed by the contractor, but before the officers of the board have signed it, an injunction issued restraining further action, and subsequently on the injunction being dissolved, the contract is signed and the building erected, the complainant at whose instance the injunction issued, will be liable on his injunction bond for the loss sustained by the contractor from the delay resulting from the injunction.

Argued Nov. 22, 1910. Appeal, No. 269, Oct. T., 1909, by defendant, from judgment of C. P. Delaware Co., March T., 1903, No. 231, on verdict for plaintiff in case of School District of Nether Providence Township, the directors of the same and Willard T. Galbraith, contractor, v. James Watts Mercur and the Media Title and Trust Co. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Affirmed.

Assumpsit on an injunction bond. Before JOHNSON, P. J.

The facts are stated in the opinion of the Superior Court.

Verdict for plaintiff for $354, upon which judgment was entered for $133.75, all above that sum having been remitted.

*Errors assigned* were various instructions.

*Edward H. Hall,* for appellants.—In order to create a liability under a contract provided for by the common school law, the statutory requisitions must be complied with: Cascade Sch. Dist. v. Lewis Sch. Dist., 43 Pa. 318; Dyberry Sch. Dist. v. Mercer, 115 Pa. 559; Whitehead v. North H. Sch. Dist., 145 Pa. 418; Strathern v. Gilmore, 184

Pa. 265; Birmingham Pub. Sch. Dist. v. Sharpless, 27 Pa. Superior Ct. 630.

*Kingsley Montgomery,* for appellee.

OPINION BY PORTER, J., April 17, 1911:

The board of school directors of the school district of Nether Providence township, having duly resolved to erect a new school building, located the same, acquired title to the property upon which it was to be erected, and procured plans and specifications for the building, invited proposals from contractors for the erection of the building, according to the plans and specifications. Bids were submitted to the school board by a number of contractors, among others Willard T. Galbraith, for the erection of said building, which bids were opened by the school board on July 31, 1901, and the bid of Willard T. Galbraith, being the lowest, was accepted by the school board, which in connection with said acceptance adopted this resolution: "The said Galbraith to execute a contract and give security to be approved by a committee to be appointed by the president of the board." The president at this meeting duly appointed this committee and their names were entered upon the minutes of the board. The committee caused a written contract to be prepared and on August 3, 1901, submitted this contract to Galbraith, the contractor, who thereupon signed the contract, which was approved in writing by all the members of the committee and was then delivered by Galbraith to the committee of the school board. Galbraith, on August 5, 1901, executed a bond with a trust company as surety, as security for the performance of his contract, which security was by him delivered to the committee on that day and was by the committee approved in writing. Galbraith was directed by the committee to proceed with the work and had commenced the excavation for the cellar when, on August 13, 1901, the work was stopped and all the parties who appear as plaintiffs in the present action were

restrained from proceeding with the work by a preliminary injunction issued in proceedings in equity instituted by James Watts Mercur and wife. James Watts Mercur, prior to the issuing of the injunction, had filed in the proceeding in equity a bond, with the Media Title & Trust Company as surety, conditioned to indemnify the defendants, in the equity proceedings, for all damages which might be sustained by reason of said injunction. The preliminary injunction was dissolved on September 5, 1901, and the matter having proceeded to final hearing the bill was, on April 2, 1903, dismissed at the costs of the plaintiffs. Immediately after the dissolution of the preliminary injunction, and upon the same day, the written contract, which had been approved by the committee of the board and signed and delivered by Galbraith on August 3, was at a meeting of the school board and by its direction duly signed and sealed by the president pro tempore of the board, duly designated by resolution, and the secretary, and Galbraith was thereupon directed to proceed with the work, which he accordingly did. This action was brought on the injunction bond on May 3, 1903, Galbraith, the contractor, alleging that he had sustained damage by reason of the injunction in that the delay occasioned thereby had prevented the erection of the building before the arrival of winter and had thus added to the cost of the work. After two trials in the court below, in each of which there was a verdict against the defendants, a judgment was after the second trial entered in favor of the plaintiffs and against the defendants, and from that judgment we have this appeal.

The primary contention of the defendant is that there can be no recovery in this action because at the time the injunction issued the written contract between Galbraith and the school board, for the erection of the building, had not been actually signed by the president and secretary of the school board. We are of opinion that this contention ought not to be sustained. The bid of Galbraith for the erection of the building had been by

the school board accepted, and the plans and specifications upon which the bid had been founded determined precisely what Galbraith was to do. The committee of the school board had been authorized to determine the form of the written contract which Galbraith would be required to sign, and that committee having prepared the contract it was actually executed by Galbraith and left in the possession of the committee, on August 3, 1901, and on August 5, 1901, the committee had approved and accepted, as they were authorized to do, the security which Galbraith was required to give to insure the performance of his contract. True it is that at the time the injunction issued the written contract had not been actually signed by the president and secretary of the school board. But the school board had in its possession the contract and bond of Galbraith, he was bound by his undertaking and could not withdraw without the consent of the board: School Directors v. McBride, 22 Pa. 215. With affairs in this position if the appellant had not interfered by injunction and Galbraith had proceeded with the work and finished it, and if the president and secretary of the school board had not signed the written agreement, Galbraith would not have been able to use that written agreement as evidence of his contract, but he might have recovered for his work in an action of assumpsit: McLain v. Snyder Township School District, 12 Pa. 204: School District of McKeesport v. Miller, 1 Pennypacker, 510. Even if it be assumed that Galbraith had no right to proceed with the work until the written contract was actually signed by president and secretary of the board, or by such persons as the board appointed to fill their offices temporarily, for that purpose, then it logically follows that anything which wrongfully prevented the mere physical execution of the contract would to the same extent delay the commencement of work on the building. The right to make a contract is a right of property, and anything which wrongfully prevents those who desire and are authorized to contract from exercising that right is a wrong which may

be compensated in damages, when such damages are capable of ascertainment by any recognized standard. The injunction which was issued rendered it impossible for the school board to cause the contract to be signed by their representatives. The committee of the school board had approved the written contract, the injunction prevented the school board from executing their purpose to have the contract signed, but the moment the injunction was stricken down the school board did promptly cause the contract to be signed. This evidence was sufficient to warrant a finding that the injunction caused a delay in the commencement and completion of the work. The appellant has failed to print in his paper-book the record in the injunction proceeding, although that record was offered in evidence, and we must assume that his interference with this work was not warranted by the facts, for the injunction was dissolved and the bill was subsequently dismissed. The verdict of the jury establishes, by necessary implication, that the injunction delayed the erection of the building. It was entirely proper to admit evidence tending to establish that the result of the delay in commencing the work was to render it impossible to complete the building before the arrival of cold weather and that this increased the cost of construction, involving an expenditure of money by Galbraith which would not otherwise have been required. The specifications of error are dismissed.

The judgment is affirmed.